AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Mississippi

FILED
May 10 2024
Arthur Johnston, Clerk

| | |
|---|---|
| United States of America<br>v.<br>WILMER ALEXANDER MONTUFAR<br>a/k/a Welmer Alexander Montufar<br>a/k/a Wilmer Alexander Montefar<br>a/k/a Wilmar A. Montufar<br>a/k/a Wilmer Montuvar-Martinez<br>Defendant(s) | Case No.<br>1:24-mj-541-RPM |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **May 7, 2024** in the county of **Pearl River** in the **Southern** District of **MS, Southern Division**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Unlawful Return After Deportation or Removal |
| 18 U.S.C. § 1546(a) | Fraud or Misuse of Visa, Permit or Other Document |

This criminal complaint is based on these facts:
See Affidavit attached hereto and incorporated herein.

☑ Continued on the attached sheet.

_____
Complainant's signature

John Griggs, SA, Homeland Security Investigations
Printed name and title

Sworn to before me and signed in my presence.

Date: May 10, 2024

_____
Judge's signature

City and state: Gulfport, Mississippi

Robert P. Myers, Jr., United States Magistrate Judge
Printed name and title

# AFFIDAVIT

STATE OF MISSISSIPPI )
COUNTY OF HARRISON :
SOUTHERN DISTRICT OF MISSISSIPPI )

I, John Griggs, being first duly sworn, hereby depose and say that:

1.  I am a Special Agent (SA) with Homeland Security Investigations (HSI), United States Department of Homeland Security (DHS), presently assigned to the Office of the Resident Agent in Charge, Gulfport, Mississippi (MS). I have been a Special Agent since May 2018 and am a graduate of the Federal Law Enforcement Training Center. I have received training with immigration investigations and previously worked immigration investigations involving the apprehension of immigration violators.

2.  On or about May 6, 2024, at about 12:45 p.m., Mississippi State Police Interdiction Officer William Twiner observed a Honda Civic displaying a certain Texas license plate number, driving northbound on Interstate 59. Officer Twiner observed that the Honda Civic was traveling in the left lane and impeding the flow of traffic. Officer Twiner conducted a traffic stop on the vehicle on Interstate 59 eastbound at about Mile Marker 31 in Pearl River County in the Southern Division of the Southern District of MS.

3.  Officer Twiner approached the vehicle and observed that there were two individuals inside the Honda Civic. The driver was identified by Honduran passport as Wilmer Alexander Montufar, a citizen of Honduras, and the front seat passenger was identified as a sixteen-year-old female juvenile (JUV) Honduran citizen. Both Montufar and JUV were unable to speak the English language.

1

4.      Pearl River County Sheriff's Office (PRCSO) Deputy Tania Lucas responded to the traffic stop location to provide translation. JUV initially said she was a friend of Montufar; but, did not know where they were going in Mississippi. Contact was made by phone with JUV's mother in Honduras, who said she was aware of and approved of JUV being with Montufar. JUV's aunt in Texas was also contacted by phone and said she had reported JUV as a runaway "a while back." JUV's aunt declined to provide further information and said she was working and could not speak any longer. JUV said a twenty-five-year-old female and a three-year-old child also shared the same residence as she and Montufar in Louisiana. Montufar was arrested and taken into custody for violations of Mississippi state law for driving without a driver's license and traveling in the left lane. Montufar and JUV were transported to the Pearl River County Sheriff's Office for further questioning.

5.      JUV was interviewed by MS Child Protective Services Agent Parker, PRCSO Major Allee, and Officer Twiner. JUV declined consent for access to the contents of her iPhone and said there were possibly censored photos of her on the phone. During a restroom break, JUV told PRCSO Deputy Lucas that she had not been completely honest and that Montufar was her boyfriend and that the two had been having sexual intercourse since she was fourteen years old, which is when she first moved to the United States. JUV was turned over to MS Child Protective Services.

5.      Major Allee, Deputy Lucas, and Officer Twiner conducted a post Miranda interview with Montufar which was video recorded. Montufar admitted to bringing JUV from Honduras into the United States. Montufar said he and JUV were in a relationship, and that he was aware that she was sixteen years old. Montufar admitted to having sexual intercourse with JUV since she was fourteen years old.

7.  Local law enforcement called federal officials and, on or about May 7, 2024, at about 2:00 p.m., Homeland Security Investigations (HSI) SA John Griggs and SA Troy McCarter arrived at the Pearl River County Sheriff's Office. SA Griggs and SA McCarter transported Montufar to the U.S. Border Patrol Station in Gulfport, MS.

8.  At about 3:00 p.m., at the Border Patrol Station in Gulfport, database queries confirmed that Wilmer Alexander Montufar, had been ordered removed from the United States on or about four (4) previous occasions. DHS databases revealed Montufar was deported or removed from the United States to Honduras, on or about April 14, 2009, October 18, 2012, March 9, 2013, and August 1, 2018. Database queries revealed that Montufar had not received consent or permission to apply for readmission or to reenter the United States from either the U.S. Attorney General or from the DHS Secretary.

9.  At about 4:00 p.m., Montufar was brought to an interview room, and was read a statement of his Miranda rights in the Spanish language by Border Patrol Agent (BPA) Angel Rivera. Montufar waived his rights verbally and by signing a Spanish language waiver form, and agreed to speak with HSI Special Agents. Present for the video recorded interview were SA Griggs, SA McCarter, SA Buckley, and BPA Rivera who continued to translate for the duration of the interview.

10. The following is a summary of post Miranda statements by Montufar and is not all inclusive. Montufar admitted to entering McAllen, Texas, from Reynosa, Mexico, in 2022. He said he and JUV had been dating for two years and had known each other for six years in Honduras. He said JUV entered the U.S. about two months after he entered and she coordinated with meeting him once in the U.S. Montufar said he and JUV lived together in Louisiana and had been having sex together since she was fifteen years old, and that her family was aware of

3

and supported their relationship.

11.     Montufar denied ever being arrested for non-immigration violations, however, when asked about a previous battery arrest, he admitted to being arrested for battery in New Orleans, Louisiana, when he got into an argument with his aunt. Montufar was unsure if he had been convicted of the charge but admitted that he did pay $1250.00 to the court. Law enforcement database checks did not indicate if Montufar was convicted.

12.     Montufar stated that JUV was not employed or in school, and that while he worked, JUV stayed at their residence and cooked and cleaned. When asked if he had any children or were married, Montufar said he had one child from a previous relationship. Montufar said he and JUV intended to get married when she was nineteen years of age.

13.     Montufar consented verbally and in writing to allowing HSI agents to forensically examine his Samsung Galaxy A14 5G, Model: SM-A146U, cellular phone. Initial onsite previews of the data extracted from the device revealed images of Montufar with the JUV he was traveling with when stopped. Initial preview did not reveal any obvious images of child sexual abuse material (CSAM).

14.     Onsite previews of data extracted from the device also revealed approximately four images of what purported to be a Texas (TX) identification (ID) card bearing Montufar's image and the name: Jose Luis TIRADO, about five images of what purported to be Social Security Administration (SSA) cards four with the name: J.L.T. and one with the name J.L.C., and two images of Montufar's Honduran ID card bearing Montufar's image and his full name: Wilmer Alexander Montufar. When asked about the Texas identification card and social security card, Montufar said he purchased the documents for about $800.00 and used then for employment. He acknowledged that the documents were false and were not issued by a government agency. It

should be noted that a SSA card is listed by statute as showing that the lawful holder, named on the card, is authorized to work in the U.S.

15.	Queries of the TX ID through law enforcement data bases revealed no records with the listed name or ID number on the card. Queries of the SSA numbers found on the images of the SSA cards through public records data bases revealed that the numbers are being used by various individuals.

16.	Based on the aforementioned facts, your affiant believes there is probable cause that Wilmer Alexander Montufar unlawfully reentered the United States, without the Attorney General or Secretary of Homeland Security having consented to his application for readmission, after having been previously removed from the United States, and is in violation of both Title 8, USC, Section 1326(a), Reentry of a Removed Alien and Title 18 USC, Section 1546(a), Fraud or Misuse of Visa, Permit or other document.

John Griggs
Special Agent
Homeland Security Investigations
U.S. Department of Homeland Security

Sworn to and subscribed before me this, the 10th day of May 2024.

Robert P. Myers, Jr.
United States Magistrate Judge
Southern District of Mississippi